## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 20 2018, 11:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert J. Hardy
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachariah Holden,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 20, 2018

Court of Appeals Case No.
57A05-1708-CR-2019

Appeal from the Noble Superior Court

The Honorable Michael J. Kramer, Judge

Trial Court Cause No.
57C01-0802-FB-5

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Zachariah Holden (Holden), appeals the trial court's revocation of his previously suspended sentence.

We affirm.

# ISSUE

Holden presents us with one issue on appeal, which we restate as: Whether the trial court abused its discretion in revoking the entirety of Holden's previously suspended sentence following his admission to several violations of the conditions of his probation.

# FACTS AND PROCEDURAL HISTORY

On February 13, 2008, the State filed an Information, charging Holden with armed robbery, a Class B felony, and as an habitual offender. Following a three-day jury trial, Holden was found guilty as charged. On February 29, 2009, the trial court sentenced Holden to fifteen years on the robbery conviction, enhanced by twenty years on the habitual offender adjudication, with five years suspended to probation. On September 2, 2016, Holden filed a motion to modify his sentence. Granting Holden's motion, effective December 1, 2016, the trial court placed him on probation to serve the remainder of his sentence. Among Holden's conditions for probation were the customary requirements to obey the law, abstain from using, possessing, or consuming alcohol, or any other controlled substances unless he had a valid and current prescription, and to submit to all drug and alcohol tests.

[5]     On February 28, 2017, Holden tested positive for amphetamine, methamphetamine, and cocaine. On March 9, 2017, the State filed an Information, charging Holden with false informing, a Class B misdemeanor. Based on both incidents, the State filed a first report of probation violation on March 20, 2017, alleging that Holden violated his probation by committing a new crime and by using illegal drugs. An initial hearing was held on April 27, 2017. Before any other hearing could be conducted, the State filed a second violation report on May 16, 2017, claiming that Holden's probation officer had noticed a device in Holden's possession on May 15, 2017, when Holden was required to submit to a drug screen. Holden refused to comply and surrender the device. Upon questioning, he admitted to having brought someone else's urine to the test and to try to submit it as his own. Accordingly, the State charged Holden with possession of a device designed to interfere with drug or alcohol screening tests, a Class B misdemeanor. Holden further tested positive for amphetamine and methamphetamine on April 12, 2017, and April 20, 2017.

[6]     After the second probation violation was filed, Holden was arrested and held without bond. While Holden was incarcerated, his father passed away. On July 17, 2017, the trial court granted Holden's request for a furlough to attend the funeral and released him for a few hours on July 20, 2017. At some point during this furlough, Holden arranged to buy drugs and brought them back to jail.

[7]     Although Holden attempted to gain admittance into the Noble County Drug Court Program, on August 4, 2017, the trial court was notified that Holden's

request was denied due to his prior conviction for a violent felony. On August 17, 2017, Holden admitted to violating his probation by testing positive for methamphetamine several times, using drugs, trying to mask his drug use by submitting a false urine sample, and committing new criminal offenses. As part of the plea agreement reached to dispose of these probation violations and Holden's two pending misdemeanor charges, the State agreed to forego filing any new charges, including a habitual offender enhancement, or any charges related to his act of bringing drugs into the jail. At the close of the hearing, the trial court ordered the entirety of Holden's remaining sentence to be served at the Department of Correction.

[8] Holden now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

[9] Holden contends that the trial court abused its discretion by imposing the entirety of his previously suspended sentence. "Probation is a matter of grace left to the trial court's discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). It is within the discretion of the trial court to determine probation conditions and to revoke probation if these conditions are violated. *Id.* We review the appeal from a trial court probation determination and sanction for an abuse of discretion. *See id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State*, 963 N.E.2d 1110, 1112

(Ind. 2012). A probation hearing is civil in nature and the State need only prove the alleged violation by a preponderance of the evidence. *Id*

[10] Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition has actually occurred. *Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005), *trans. denied*. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. *Id*. However, where, as here, a probationer admits to the violations, the court can proceed immediately to the second step of the inquiry and determine whether the violation warrants revocation. *Id*. In determining whether the violation warrants revocation, the probationer must be given an opportunity to present evidence that explains and mitigates his violation. *See id*.

[11] In support of his argument that the trial court abused its discretion, Holden posits that the trial court considered evidence outside the record in revoking his sentence. Specifically, Holden maintains that the trial court based its decision on the claim that he brought drugs into the jail after returning from his furlough—an allegation he did not admit to.

[12] A review of the transcript reveals that the information that Holden brought drugs into the jail was not the basis for either the revocation or the trial court's imposition of the sanction. Rather, the trial court's reference to Holden's conduct was in response to Holden thanking the trial court for the ability to attend his father's funeral:

Well I'm glad that you got to go bury your father, unfortunately due to your actions that's probably something that I'm not going to allow anybody else to do in the future because of your conduct. And other people are going to have mothers and fathers die and not be able to be there at their funeral because of what you did, because I don't want to see drugs coming back into the jail.

(Transcript p. 38). The trial then continued its statement by sentencing Holden for the new crimes committed. Expressing a concern about the seriousness of the underlying robbery conviction and the habitual offender adjudication, as well as the fact that the original sentence was modified and Holden was released early, the trial court ordered his probation revoked and the balance of the suspended sentence served.

[13] Furthermore, based on Holden's probation violations, we cannot conclude that the trial court abused its discretion in imposing the entire previously suspended sentence. Through the modification of Holden's sentence of the enhanced robbery conviction, the trial court awarded him a new opportunity. However, instead of availing himself of that chance, Holden committed two new misdemeanor offenses and tested positive for methamphetamine three times during the less than six months he served on probation. Accordingly, the trial court could reasonably conclude that probation was not an effective tool to moderate Holden's behavior and ensure his compliance with the law.

# CONCLUSION

Based on the foregoing, we hold that the trial court did not abuse its discretion in sentencing Holden to the remainder of his previously suspended sentence.

Affirmed.

Baker, J. and Brown, J. concur